**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:16-cv-00143 |
| v. | ) | |
| | ) | Judge Watson |
| DENISON UNIVERSITY, et al. | ) | |
| | ) | Magistrate Judge Jolson |
| Defendants. | ) | |

## DEFENDANT DENISON UNIVERSITY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF JOHN DOE'S AMENDED COMPLAINT

Denison's Motion to Dismiss clearly and succinctly explains why Plaintiff's Amended Complaint fails to state a plausible claim under federal or state law. In response, Plaintiff filed a needlessly lengthy, rambling "Memocontra" [sic] in the apparent hope that its mere volume and chaos will draw attention away from the legal issues presented. Put another way, Plaintiff attempts to convince the Court to deny Denison's Motion through confusion rather than by force of law or logic.[1]

Instead of responding to the legal issues presented by Denison's Motion, Plaintiff uses his Memocontra as a platform to pontificate about the history and politics behind Title IX and to debate what occurred on the night of the alleged incident of sexual assault underlying this case. This Court is not presently tasked, however, with making factual determinations or with determining the propriety of Title IX or the directives and guidance propagated under Title IX. The issue before this Court is whether Plaintiff has sufficiently pled facts to state a plausible

---

[1] Plaintiff's 55-page Memocontra – inclusive of 78 footnotes with 645 lines of additional text in 11 point font – consistently meanders through topics that are entirely unrelated to the grounds for dismissal. If Plaintiff's footnotes were included in the body of Plaintiff's Memocontra, it would be over 85 pages long, demonstrating Plaintiff's lack of good faith in abiding by this Court's already generous page limit extension.

claim for relief.  He has not.

Plaintiff's Memocontra – just like his Amended Complaint – is filled with conclusory statements without any base of cognizable factual support.  Through these naked assertions, Plaintiff repeatedly and deliberately misrepresents case law, regulations, directives, policies, and other outside materials cited in his Amended Complaint.  Plaintiff also ignores controlling case law from the Sixth Circuit and Ohio federal courts that govern the issues at hand, and relies upon cases that have little or no precedential value.  When the Court's attention is directed back to the legal issues advanced in Denison's Motion, it becomes abundantly clear that Plaintiff has not alleged facts or argument sufficient to survive Denison's Motion to Dismiss.

I.    **Count Three Must Be Dismissed Against Denison Because Plaintiff Fails To Specify Any Contractual Term That Was Breached And Fails To Plausibly Plead That He Was An Intended Beneficiary.**

      A.    <u>Plaintiff's Claim For Breach Of Denison's Policies Still Fails To Specify Any Term Of Denison's Policies That Was Breached</u>

Under Ohio law, in order to state a plausible breach of contract claim, a party must specify the term of the contract that was breached.  (D.E. 40 at 6–7)  In Plaintiff's Memocontra, Plaintiff contends that his claim for breach of Denison's policies is based on: (1) the Code of Student Conduct ("CSC"); (2) the Sexual Assault Policy ("SAP"); (3) "materials" from outside organizations incorporated into the CSC because the CSC reserved the right to make amendments; and (4) federal, state, and local "requirements" incorporated into the SAP because the SAP committed to comply with such requirements.  (*See* D.E. 44 at 31–49)  Plaintiff, however, has failed to identify any term in the CSC or SAP that was breached.  Plaintiff has also failed to plausibly allege that any other "materials" or "requirements" were incorporated into Denison's policies and not followed.

       1.    *Plaintiff Has Not Identified Any Term Of The CSC That Was Breached.*

Plaintiff claims Denison breached the CSC in three ways: (1) denying him the right to question witnesses; (2) limiting his access to Jane Doe's victim "impact statement"; and (3) empaneling a second University Conduct Board (UCB) to make a sanctions recommendation. However, the facts as alleged by Plaintiff simply do not, as a matter of law, plausibly support the conclusion Plaintiff seeks.

First, Plaintiff claims in a footnote that the CSC and SAP gave him a right to question witnesses, and cites to part of one sentence from the CSC and part of two sentences from the SAP to support his allegation.  (*See* D.E. 44 at 35 n.52)  The CSC states "Witnesses are normally called forward during investigations, but may also be called forward ***by the conduct educator or UCB*** to participate in a disciplinary hearing." (D.E. 29-3 at17–18) (emph. added)  That provision merely notes that the conduct educator or UCB may call a witness forward; nowhere does it give a student a right to question witnesses.  The SAP states "the complaining student will be asked by the hearing body to participate in the hearing as a witness."  And states, "both the complainant and the accused student will be given opportunities to question ***information*** before the hearing body."  (D.E. 29-3 at 4) (emph. added).[2]  Those provisions also do not give a student a right to question witnesses.  Courts in this Circuit have held there is no right to cross-examine witnesses in school disciplinary hearings.  *See, e.g.*, *Ashiegbu v. Williams*, No. 99-4083, 2000 U.S. App. LEXIS 21519, at *5 (6th Cir. Aug. 18, 2000) ("[Plaintiff] was not constitutionally entitled to confront his accusers . . . or cross-examine witnesses."); *Doe v. Univ. of Cincinnati*, No. 1:15-CV-681, 2016 U.S. Dist. LEXIS 37924, at *34–*35, *37 (S.D. Ohio Mar. 23, 2016)

---

[2]  Plaintiff omitted the words "by the conduct educator or UCB" from the CSC provision and combined the two separate SAP provisions into a single sentence in his Memocontra in an attempt to mislead this Court about the language in the CSC and the SAP.  (*See* D.E. 44 at 35 n.52).

("[S]tudents do not have a general right to cross-examine adverse witnesses in school disciplinary proceedings."); *Flaim v. Med. Coll. of Ohio*, No. 3:03CV7197, 2004 U.S. Dist. LEXIS 5633, at *22 (N.D. Ohio Mar. 16, 2004) (finding no due process violation in disallowing cross-examination of witnesses).

Second, Plaintiff claims Denison violated the CSC by limiting his access to Jane Doe's victim impact statement.  (D.E. 44 at 39–40)  The CSC, however, only states that if a victim impact statement is provided, "[t]he statement shall be reviewed ***only during sanctioning*** and shall become part of the case record ***at that time*** and available for review by the parties involved."  (D.E. 29-3 at 18) (emph. added).  Plaintiff has simply not alleged that Denison denied him the opportunity to review Jane Doe's impact statement once it became part of the case record.  He only complains about being provided with "limited" access. (D.E. 44 at 40)

Third, Plaintiff claims Denison violated the CSC by creating a second UCB panel to make a sanctions recommendation.  (D.E. 44 at 40)  But Plaintiff has not identified any provision of the CSC that requires the same UCB members who make a responsibility determination to also make a sanctions recommendation.  Rather, the policy only requires that "responsibility is decided by the UCB," and that a panel make sanctions recommendations.  (D.E. 29-3 at 18)

    2.   *Plaintiff Has Not Identified Any Term Of The SAP That Was Breached.*[3]

Plaintiff claims Denison breached the SAP by: (1) failing to abide by the SAP's promise to adjudicate allegations of sexual misconduct in a gender "blind" fashion; and (2) failing to "protect[ ] . . . the rights of accused students."  (*See* D.E. 44 at 38–39)  Plaintiff, however, again has not identified any facts that support these conclusory allegations.

First, the only portion of the SAP containing the term "blind" is a general statement about

---

[3]  Plaintiff's claimed right to cross-examine witnesses based on general witness participation language in the SAP was addressed above.  (*See supra* at 3)

the SAP, which states "[i]ts elements are blind to the sexual orientation or gender identity of individuals engaging in sexual activity or sexually exploitative behavior."  (D.E. 29-3 at 1)  Plaintiff has not identified any obligation that was breached in this general statement about the "blindness" of the elements of the policy.  "Indefinite and aspirational language does not constitute an enforceable promise under Ohio law."  *Ullmo v. Gilmour Acad.*, 273 F.3d 671, 677 (6th Cir. 2001).  Furthermore, "a breach of contract claim will not arise from a failure to fulfill a statement of goals or ideals."  *Id.* (cited by *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 709 (D. Vt. 2012) ("Language in a college handbook or other official statement that is merely aspirational in nature, or that articulates a general statement of a school's 'ideals,' 'goals,' or 'mission,' is not enforceable."); *see also David v. Neumann Univ.*, No. 15-4098, 2016 U.S. Dist. LEXIS 75710, at *11 (E.D. Pa. June 9, 2016) (holding policy declaring school's "aspirational approach to complaints involving illegal discrimination, harassment and/or retaliation" is "not definite enough to be enforced").  Finally, as detailed below, Plaintiff has not plausibly alleged that Denison engaged in any gender discrimination.  (*See infra* at 14–23)

Second, the portion of the SAP regarding protection of rights states that the policy "plac[es] special emphasis on the rights, needs and privacy of survivors/victims, as well as protection of the right of accused students."  (D.E. 29-3 at 1)  Again, Plaintiff has not identified any obligation that was breached in this general statement of "special emphasis."  Furthermore, Plaintiff has not identified any legal "right" he had that was not protected.

3.    *Plaintiff Has Not Plausibly Pled That CSMART, ATIXA, NCHERM, Or Culture Of Respect Materials Were Incorporated Into The CSC And Were Not Followed.*

Plaintiff alleges that in the CSC Denison "reserves the right to make permanent amendments or rules deemed necessary for the protection of . . . the general welfare of students."

Therefore, he argues, "materials issued by CSMART" and "materials issued by ATIXA and NCHERM" were incorporated into the CSC and breached.  (D.E. 44 at 33)  Plaintiff also identifies materials from the Culture of Respect website that he claims were somehow incorporated and not followed.  (*Id.* at 36, 41)  Plaintiff's argument utterly fails.

First, a reservation of the right to make amendments to policies for the general welfare of students cannot plausibly or reasonably be interpreted to incorporate materials from outside sources not identified in the policies.  Plaintiff's only argument for this is that Denison's reservation of the right to amend its policies resulted in "ambiguity in contractual terms" which should be "construed against the drafter."  (D.E. 44 at 33)  There is, however, nothing ambiguous about the language in Denison's policy.

Under Ohio law, ambiguity must be apparent on the face of the contract.  *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008).  A contract is only ambiguous when the language is susceptible to two or more *reasonable* interpretations.  *Id.*  Offering a differing, albeit unreasonable, interpretation does not make contract terms ambiguous.  *Id.* at 766–67.  A contract must be construed to give reasonable effect to the contract's terms, and a court cannot adopt an unreasonable interpretation.  *Id.* at 763–64.  Under Plaintiff's argument, any outside "materials" to which Denison looks for guidance could become part of Denison's policies and therefore create contractual liability.  This interpretation is clearly unreasonable and implausible.

Second, and perhaps even more fundamentally, Plaintiff has not identified any materials from CSMART, ATIXA, NCHERM, or the Culture of Respect website that were allegedly incorporated into Denison's policies and that were breached.  The only CSMART material Plaintiff identifies is "The Ten Things About Sexual Assault You Need to Know as a Denison University Employee."  (D.E. 29 ¶ 57; D.E. 29-4 at 1–2)  Plaintiff has not alleged this employee

pamphlet was ever incorporated into the CSC, nor has he alleged that any portion of that employee pamphlet was breached.

For ATIXA materials, in a footnote, Plaintiff claims that Steve Gauger, Denison's Title IX Coordinator, sent an email "detailing Denison's adoption of ATIXA's definition of incapacitation." (D.E. 44 at 32 n.44) The referenced email attached to Plaintiff's Amended Complaint appears to be a pasted definition of "incapacitation." (D.E. 29-2 at 96) Starkly in contrast to Plaintiff's representation, that email does not "detail[] Denison's adoption" of that definition, or state anything that could plausibly suggest that definition was incorporated into the CSC. Furthermore, that definition does not even state what Plaintiff claims. Rather, it states that "Incapacitation is a state where someone cannot make rational, reasonable decisions because they lack the capacity to give knowing consent (e.g., to understand the 'who, what, when, where, why or how') of their sexual interaction." (*Id.*) Plaintiff fails to plausibly allege how Denison could breach an "e.g." portion of a definition.

Plaintiff also complains that Denison failed to apply a "tip" from ATIXA that addressed "how five colleges 'got it completely wrong' in finding male students responsible for 'hook-ups' when alcohol was involved." (D.E. 44 at 38) There is nothing in Plaintiff's Amended Complaint that plausibly suggests that ATIXA's "tip" was incorporated into the CSC, nor is it conceivable how Denison could breach an ATIXA "tip."

Finally, for materials on the Culture of Respect website, Plaintiff claims the "blueprint" gave him a right to have an attorney present with him "at all phases of the investigation and adjudicatory process . . . ." (*Id.* at 36; D.E. 29 ¶ 68) He also claims the blueprint gave him "rights" to "an investigation conducted by individuals . . . who do not have a conflict of interest or bias [] against . . . the accused student." (D.E. 44 at 41; D.E. 29 ¶ 35) Nothing in Denison's

student policies indicates that these claimed "rights" from the "blueprint" were incorporated into the CSC.  Furthermore, Plaintiff has deliberately misrepresented what is on the webpage for the "blueprint" cited in his Amended Complaint: http://cultureofrespect.org/legal-issues/for-students. (D.E. 29 ¶¶ 35, 68)  That webpage discusses only "Survivors' Rights" and states that a "*victim*" has a right to an attorney and a right to have an investigation conducted by someone who does not have a conflict of interest.  That webpage states *nothing* about an accused's right to have an attorney attend a hearing and *nothing* about an accused's rights in an investigation.  Therefore, Plaintiff fails to plausibly allege how Denison breached any obligation to him, an accused.[4]

### 4.    *Plaintiff Has Not Plausibly Pled That VAWA, OCR Directives, Or Title IX Were Incorporated Into The SAP And Were Not Followed*

Plaintiff alleges that the SAP states that Denison "adheres to all federal, state and local requirements *for intervention, crime reporting and privacy provisions* related to sexual assault and other sexual misconduct."  (D.E. 44 at 33–34) (emph. added).  Plaintiff, however, has not alleged in his Amended Complaint that any requirements for intervention, crime reporting, or privacy were not followed by Denison.  Moreover, this type of indefinite and aspirational language is not sufficient to create an enforceable promise under Ohio law.  *See supra* at 5; *see also Nungesser v. Columbia Univ.*, No. 1:15-cv-3216-GHW, 2016 U.S. Dist. LEXIS 32080, at *32 (S.D.N.Y. Mar. 11, 2016).  ("[A] general statement of a university's adherence to existing anti-discrimination laws does not create a separate and independent contractual obligation.")

In addition, as addressed in Denison's Motion: (1) the VAWA regulations to which Plaintiff cites did not go into effect until July 1, 2015;[5] (2) state law claims based on Title IX are

---

[4] Plaintiff has not identified *any* materials from NCHRM that were allegedly incorporated into the CSC and not followed.

[5] The "advisor of his choice" language Plaintiff relies upon is language from VAWA.  (D.E. 29 ¶ 66) However, Plaintiff's claimed right to have an attorney present is based on a VAWA provision that did not

preempted because to impose liability for a violation of Title IX, a party must comply with the statutory requirements; and (3) there is no private right of action for violation of OCR Directives.[6]  (*See* D.E. 40 at 4, 7, 8, 13)

Plaintiff's failure to specify any term of the CSC, SAP, or any other policy that was breached requires dismissal of his breach of contract claim based on Denison's policies.  *See Gerber v. Ohio N. Univ.*, No. 3:14 CV 2763, 2015 U.S. Dist. LEXIS 56767, at *19 (N.D. Ohio Apr. 30, 2015) (dismissing contract claim when plaintiff failed to specify which terms were breached and "it [was] not otherwise apparent which terms he claimed ONU breached").

> B.  Plaintiff's Claim for Breach of the Clifford/Denison Contract Fails Because Plaintiff Fails To Specify Any Term That Was Breached And Fails To Plausibly Allege He Was An Intended Beneficiary

Plaintiff's complaint about the Clifford/Denison Contract or the draft Clifford/Denison Contract (collectively referred to as the "CDC") appears to be that the CDC "violated Denison's policies by employing Clifford to adjudicate John Doe's guilt or innocence since Denison's Policies mandate this adjudication be made by a hearing panel of Denison employees and/or

---

go into effect until July 1, 2015, which was *after* Plaintiff's disciplinary hearings were complete.  (D.E. 40 at 4)  Moreover, Courts from this Circuit have held "disciplinary hearings themselves are not so complex as to require the assistance of counsel."  *Flaim*, 2004 U.S. Dist. LEXIS 5633, at *23; *see U.S. v. Miami Univ.*, 294 F.3d 797, 822 (6th Cir. 2002) (finding no right to secure counsel for disciplinary proceeding); *Cincinnati*, 2016 U.S. Dist. LEXIS 37924, at *37 (same).  Finally, the CSC in effect at the time of Plaintiff's disciplinary hearings specifically stated, "Parents, guardians, **attorneys**, or persons other than those called to the hearing **are _not_ permitted to attend or participate**." (D.E. 29-2 at 127) (emph. added).  Therefore, Denison followed its policy in not permitting attorneys to be present, and there is no basis for a breach of contract claim.

[6]  The Dear Colleague Letter and the Sexual Harassment Guidance from the OCR also do not support Plaintiff's arguments.  The provisions to which Plaintiff cites regarding due process and procedures are contained in sections of those documents regarding *public* schools, not private schools like Denison.  Plaintiff argues in his Memocontra that the provisions apply to "state-supported schools" and therefore, this could include Denison, even though it is private.  (D.E. 44 at p. 32, n.46).  This argument is not only without merit, but brazenly presented without even a good faith basis in law.  The Ohio Department of Education identifies Ohio's state-supported colleges and universities, and private universities like Denison are simply not among them.  *See* https://www.ohiohighered.org/data-reports/historical.  Also, there is no language in either document that matches what Plaintiff claims mandates investigations.  (*See* D.E. 29 ¶ 83, contrasted with cited documents on http://www2.ed.gov).

students." (D.E. 29 ¶ 133; D.E. 29-5 at 22–24; D.E. 44 at 43)

Plaintiff's allegation misrepresents the language of the CDC, and ignores the language of the CSC. The CDC states nothing about Clifford adjudicating Plaintiff's guilt or innocence. Rather, it simply provides that Clifford "shall provide determinations on whether the pertinent policies have or have not been violated." (D.E. 29-5 at 22) This is exactly in line with Denison's policies. Specifically, Denison's CSC states that it is the duty of the investigator, "to discover the matter and present findings back to the [Office of Student Conduct]." (D.E. 29-3 at 16) Thereafter, the matter "will be referred to the normal disciplinary process," including a disciplinary hearing before the UCB to determine responsibility. (*Id.*) The language of the CDC does not conflict with the language or procedures of the CSC. Moreover, Plaintiff's own exhibit establishes that Clifford's investigation report did not violate Denison's CSC, as Clifford made no determination on whether Plaintiff was guilty or innocent (*See* D.E. 29-3 at 136–98) Again, Plaintiff's failure to specify any term of the CSC (or any other policy) that was breached by the CDC requires dismissal of this claim. *See Gerber*, 2015 U.S. Dist. LEXIS 56767 at *19.

Plaintiff claims that he "is a third-party beneficiary," yet fails to plead factual allegations to plausibly support this legal conclusion. (D.E. 29 ¶¶ 131–40). Beyond the fundamental flaw that Plaintiff has failed to plausibly show that he was an intended beneficiary of the CDC, as nothing in the CDC mentions any benefit Denison or Clifford will provide to any student (*see* D.E. 29-5 at 22–24), "[a] third-party beneficiary does not acquire any rights greater than those set forth in the contract by the parties." *Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F. Supp. 2d 763, 770 (N.D. Ohio 2004). Plaintiff fails in his Amended Complaint to indicate what "right" he gets from Denison in the CDC, as the only promise flowing to Clifford in the CDC was Denison's alleged promise to pay her for her services. (*Id.*) Plaintiff does not allege,

nor would there be any basis to allege, that he has some "right" to Clifford's payment.[7]

## II. Count Four Must Be Dismissed Against Denison Because The Parties' Relationship Is Governed By Contract And Plaintiff Has Not Identified Any Clear, Unambiguous Promise That Was Made To Him.

Plaintiff does not dispute that where there is a contract between the parties, a claim for promissory estoppel is precluded as a matter of law. (*See* D.E. 40 at 11–12) Plaintiff, however, disingenuously argues that his promissory estoppel claim cannot be dismissed because Denison has not filed an Answer admitting to the existence of a contract. (D.E. 44 at 49)

As an initial matter, Plaintiff pled that "Denison Policies create[d] an express contract or, alternatively, a contract implied in law or in fact, between Denison and John Doe." (D.E. 29 ¶ 135) When a plaintiff has pled that a contract exists, a court should "not permit assertions in response to a motion to dismiss to be alternative and inconsistent with those alleged in the complaint." *Amarado Oil Co. v. Davis*, No. 5:12cv627, 2013 U.S. Dist. LEXIS 133571, at *33 (N.D. Ohio Sept. 17, 2013) (dismissing unjust enrichment and promissory estoppel claims when plaintiff pled the existence of a contract). Promissory estoppel is an equitable doctrine applied in limited circumstances to enforce a promise that does not meet the criteria of a contract. *Chabria v. EDO W. Corp.*, No. 2:06-CV-00543, 2007 U.S. Dist. LEXIS 11587, at *27 (S.D. Ohio Feb. 20, 2007). Promissory estoppel is not a doctrine designed to give a party "a second bite at the apple in the event it fails to prove breach of contract." *Google, Inc. v. Mytriggers*, No. 09 CVH-10-14836, 2013 Ohio Misc. LEXIS 11743, at *13 (Ohio Ct. Com. Pl. July 2, 2013). Therefore, it

---

[7] In Plaintiff's Memocontra, he asserts the claimed "right" he was denied is as follows: "JD details how *Clifford denied Denison its 'right'* to a gender neutral investigation pursuant to Defendant's Obligations." (D.E. 44 at 46) (emph. added). This claimed "right" is something that Plaintiff claims Clifford denied Denison. Plaintiff has failed to identify a single "right" under the CDC that *Denison denied him*. Moreover, the assertion of a breach of contract claim by a student based on an alleged contract Denison has with an investigator stretches the bounds of legal imagination. If every contract Denison entered into with an outside vendor to provide some benefit for Denison could create a breach of contract claim for Denison's students against Denison, the results would be untenable.

is not premature to decide at the motion to dismiss stage that the parties' contractual relationship precludes a promissory estoppel claim.  *See, e.g.*, *Chabria*, 2007 U.S. Dist. LEXIS 11587, at *27–*28; *Google*, 2013 Ohio Misc. LEXIS 11743, at *16.

Moreover, regardless of what Plaintiff pled, the law is well-settled that the relationship between a university and a student is contractual.  (D.E. 40 at 11); *see also Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 797–98 (N.D. Ohio 2015) ("It is well-settled that ***there is a contract*** established when a student enrolls, pays tuition, and attends classes at a school.") (emph. added) (citing *Tate v. Owens State Cmty. Coll.*, 2011-Ohio-3452, at ¶ 15 (Ohio Ct. App. July 12, 2011)); *McDade v. Cleveland State Univ.*, 2014-Ohio-4026, at ¶ 16 (Ohio Ct. App. 2014) ("[T]he relationship between a college and a student who enrolls, pays tuition, and attends class ***is contractual in nature***") (emph. added); *Lemmon v. Univ. of Cincinnati*, 112 Ohio Misc.2d 23, 26 (Ohio Ct. Cl. 2001) ("***A contract is formed*** between a student and a university when a student enrolls at the university, pays tuition, and attends classes.") (emph. added).

As an additional reason for dismissal, Plaintiff has failed to identify any clear, unambiguous promise Denison made to him, on which he relied to his detriment, that forms the basis of his claim.  (D.E. 40 at 12)

## III.    Count Five Must Be Dismissed Against Denison Because Title IX Does Not Create Negligence Liability And Any Claim For Violation Of Denison Policies Is Governed By Contract

To state a claim for negligence, Plaintiff must plead the existence of a legal duty that Denison owed him and breached.  *See Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir. 2013).  Plaintiff's negligence claim based on Denison's alleged breach of a duty to conduct the disciplinary process set forth in Title IX and Denison's policies in a non-negligent manner (D.E. 19 ¶ 149) fails as a matter of law.  (D.E. 40 at 12–14)

12

First, Plaintiff claims that Denison argues Plaintiff "cannot simultaneously raise negligence and Title IX claims in the alternative." (D.E. 44 at 50) Plaintiff misses the point of Denison's argument, which is that Plaintiff cannot state a negligence claim based on the alleged violation of a duty imposed by Title IX. Since Plaintiff seeks relief for violation of a Title IX duty, he must seek relief under Title IX, as any state law claim is preempted. (D.E. 40 at 12–14)

Second, as discussed above, the parties' relationship is contractual as a matter of law (*see supra* at 12), and Plaintiff cannot bring a negligence claim for a breach of a contractual obligation. (*Id.*) Plaintiff attempts to distinguish in a footnote the binding case of *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705 (6th Cir. 1981) (*see* D.E. 44 at 49–50 n.67), arguing that the Northern District of Ohio allowed a negligence and breach of contract claim to proceed in *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913 (N.D. Ohio 2009). Plaintiff's reliance on *Miles* is misplaced. In *Miles*, the court held that the plaintiffs could assert both contract and tort claims because the claims were based on independent product liability statutes, and therefore, "based upon ***separately identifiable statutory duties*** imposed by law." *Id.* at 924 (emph. added).[8] Here, there are not statutorily created separate duties for Plaintiff's negligence and contract claims.

Therefore, *Wolfe* controls and requires dismissal because Plaintiff does not allege that Denison "breach[ed] a duty which he owe[d] to [Plaintiff] independently of the contract, that is, a duty which would exist even if no contract existed." *See Wolfe*, 647 F.2d at 710. Consistent with *Wolfe* and the Ohio cases establishing that a relationship between a university and a student is contractual, "Ohio courts would not recognize causes of action for negligence against [a] University . . . for the asserted negligence of its agents in performing their parts in the contractual

---

[8] *Miles* does not, as Plaintiff alleges, hold generally that negligence and breach of contract claims can be pled in the alternative, nor does it cite to any cases that stand for that proposition. (*See* D.E. 44 n.49). Rather, *Miles* stands for the limited proposition that the *Wolfe* rule does not apply if there are contract and tort claims that "each have separate independent bases in the Ohio Revised Code." *Id.* at 924.

13

relationship with Plaintiff." *See Valente v. Univ. of Dayton*, 689 F. Supp. 2d 910, 924 (S.D. Ohio 2010).

**IV.     Counts Six, Seven, and Eight Must Be Dismissed Against Denison Because Plaintiff Has Failed to Plausibly Allege Facts Showing Gender Bias**

Plaintiff argues that he has pled gender bias through three methods: (1) external pressure by the federal government and outside organizations motivated Denison to discriminate against him; (2) Denison had a pattern and practice of gender bias against males; and (3) gender bias by Clifford and Denison employees motivated unlawful discipline against him.  None of Plaintiff's pleadings plausibly establish a gender bias claim under any recognized Title IX standard.

A.     Plaintiff Has Not Plausibly Pled That External Pressure By The Federal Government And Outside Organizations Motivated Denison

Plaintiff contends that he has pled the requisite circumstantial evidence to survive a motion to dismiss his Title IX claims under *Wells v. Xavier University*, 7 F. Supp. 3d 746 (S.D. Ohio 2014) by alleging that external pressure motivated Denison.  (*See* D.E. 44 at 4–10) Plaintiff fails to disclose that subsequent to *Wells*, another Court in the Southern District of Ohio – in granting a motion to dismiss Title IX claims – expressly declined to follow *Wells* on the ground that it failed to apply the proper motion to dismiss standard under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008).  *See Cincinnati*, 2016 U.S. Dist. LEXIS 37924 at *31–32 n.5 ("declin[ing] to follow *Wells*" and finding "[t]hat decision seems contrary to *Twombly* and *Iqbal*'s admonition that conclusory allegations are insufficient to state a claim"); *see also Tanyi v. Appalachian State Univ.*, No. 5:14-CV-170RLV, 2015 U.S. Dist. LEXIS 95577, at *26 (W.D.N.C. July 22, 2015) ("declin[ing] to follow the *Wells* ruling").

Instead, in evaluating Title IX claims, Denison directs the Court to the Sixth Circuit's decision in *Mallory v. Ohio University*, 76 F. App'x 634 (6th Cir. 2003), and the following

recent decisions from Ohio federal courts, which all granted motions to dismiss Title IX claims: *Cincinnati*, 2016 U.S. Dist. LEXIS 37924 (Beckwith, J.) (finding facts as alleged "do not create a plausible inference that UC discriminated against Plaintiffs on the basis of gender"); *Marshall v. Ohio University*, No.: 2:15-cv-775, 2015 U.S. Dist. LEXIS 155291 (S.D. Ohio Nov. 17, 2015) (Smith, J.) (finding plaintiff "makes conclusory allegations, [but] he fails to allege facts demonstrating that OU targets male violators but not female violators"); *Sahm v. Miami University*, 110 F. Supp. 3d 774 (S.D. Ohio 2015) (Dlott, J.) (finding "allegations put forward do not raise an inference of gender bias on the part of Miami University when examined in context"); *Doe v. Case Western Reserve University*, No. 1:14CV2044, 2015 U.S. Dist. LEXIS 123680 (N.D. Ohio Sept. 16, 2015) (Boyko, J.) (finding plaintiff's "factual allegations fall short of plausibly suggesting that CWRU's actions were motivated by sex-based bias").

In *Cincinnati*, just like in this case, "[t]he complaint [was] dominated with allegations that UC's disciplinary process, at least in cases of allegations of sexual misconduct, is driven by outside influences and training that biases the system against males accused of sexual assault and in favor of women complainants."  2016 U.S. Dist. LEXIS 37924 at *43–44.  Plaintiffs claimed there was "pressure allegedly exerted on UC and other universities by the Department of Education to find students accused of sexual misconduct guilty under a threat of a federal investigation and the withholding of federal funding."  *Id.* at *28.  Judge Beckwith, however, noted that, "actions taken by UC to comply with guidance to implement Title IX cannot have been in violation of Title IX."  *Id.* at *45.  She also found that plaintiffs' belief that UC had a "practice of railroading students accused of sexual misconduct simply to appease the Department of Education and preserve its federal funding . . . is insufficient to state a claim for relief."  *Id.* at *31.  In granting the motion to dismiss, Judge Beckwith held, "at worst UC's actions were biased

in favor of alleged victims of sexual assault and against students accused of sexual assault. However, this is not the same as gender bias because sexual assault victims can be either male or female." *Id.* at *44. Here, Plaintiff's similar allegations about pressure from the federal government, a feared loss of funding, and a bias against students accused of sexual assault (*see* D.E. 44 at 5–10) fail to state a claim for relief against Denison for gender bias.

Furthermore, in *Cincinnati*, plaintiffs claimed UC's "training materials . . . presume[d] that sexual assault complainants are truthful and . . . elevate[d] the rights of the complainants over the due process rights of the accused . . . [so] hearing members are inculcated to find a student accused of sexual misconduct guilty." *Id.* at *29.  The Court held:

> [These] allegations concerning the sexual assault training provided
> to UC staff members and pressure allegedly exerted on universities
> by the Department of Education to intensify their response to
> sexual assault complaints fall short of creating a reasonable
> inference that the [disciplinary] panels in Plaintiffs' cases were
> biased.  It should be a laudable goal for a university to raise the
> awareness of its faculty and staff to sexual assault and to increase
> their sensitivity to the particular problems that victims of sexual
> violence experience in coming forward to make complaints.

*Id.* at *30.  Here, Plaintiff's allegations about Denison using the "blueprint" from the Culture of Respect and seeking information from ATIXA and NCHERM to expand its sexual assault prevention programs (*see* D.E. 44 at 8–10) likewise fail to state a claim for relief.

B.  <u>Plaintiff Has Not Plausibly Pled That Denison Had A Pattern And Practice Of Gender Bias Against Males</u>

Plaintiff contends that he has pled that Denison had a pattern and practice of bias against male students alleged to have engaged in sexual misconduct.  (*See* D.E. 44 at 10–14)  In support of this allegation, he claims to have attached "filings from four lawsuits by male students who alleged Denison unlawfully disciplined them for alleged sexual misconduct."  (*Id.* at 11)  Even setting aside the fundamental flaw that mere unproven allegations of unlawful discipline cannot

16

be used to establish a pattern and practice, none of the lawsuits Plaintiff references even assert Title IX claims. Likewise, none of these lawsuits claim any female accused of sexual assault was treated better than a male accused of sexual assault.

As discussed in detail in Denison's Reply in Support of its Renewed Motion to Strike, one of those lawsuits did not result from any charges, let alone formal discipline, and so cannot form the basis to support Plaintiff's claim of an unlawful pattern of discipline. (D.E. 29-1 at 36– 113) The other three non-verified complaints (all filed by the same counsel representing Plaintiff herein) are based on incidents occurring in 2009–2010, 2011, and 2013. (D.E. 29-1 at 15–35 and 149–63; D.E. 29-2 at 1–95)

The Sixth Circuit has held that to show a "pattern" of discrimination, the plaintiff must demonstrate that discrimination was "standard operating procedure." *Mallory*, 76 F. App'x at 640 (citing *Lujan v. Franklin Cty. Bd. of Educ.*, 766 F.2d 917 (6th Cir. 1985)). Judge Dlott, in granting a motion to dismiss a Title IX claim in *Sahm*, 110 F. Supp. 3d 774, found that

> [I]ncidents of alleged sexual assault which occurred between 2003 and 2011 do not demonstrate gender bias on the part of the University. The prior incidents are too remote in time to be even circumstantial evidence in this case absent specific allegations which would connect the incidents to the University's disciplinary proceedings against Sahm (occurring in 2013).

*Id.* at 779. Therefore, in this case, prior alleged incidents occurring in 2009–2010, 2011, and 2013, and which are not connected to the facts of this case, are similarly too remote as a matter of law to plausibly show gender discrimination was Denison's standard operating procedure.

Furthermore, Plaintiff acknowledges that in recent years males have *not* been disciplined. (*See* D.E. 29 ¶ 10; D.E. 44 at 7) (alleging Denison failed to discipline male students); (D.E. 29 ¶ 88; D.E. 44 at 40) (alleging Denison found Plaintiff not responsible for prior sexual assault). As in *Cincinnati*: "Plaintiffs' own complaint demonstrates that males <u>are not</u> invariably found

17

responsible when charged with sexual misconduct violations – the [disciplinary] panel acquitted Doe I of the charge related to Jane Roe I." 2016 U.S. Dist. LEXIS 37924 at *48.  Therefore, Plaintiff has not plausibly pled that sex discrimination is the standard operating procedure.

C.     Plaintiff Has Not Plausibly Pled That Gender Bias By Clifford And Denison Employees Motivated Unlawful Discipline Against Him

Plaintiff contends that he has pled that individuals involved in his disciplinary proceeding – President Weinberg, Vice President Kennedy, Defendant Clifford, and Kristin Hausman – were motivated by gender bias.  (*See* D.E. 44 at 13–15)  As an initial matter, school disciplinary boards "are entitled to a presumption of honesty and impartiality absent a showing of actual bias," and "[t]he alleged bias of the disciplinary board must be evident from the record and not based on inference and speculation." *Cincinnati,* 2016 U.S. Dist. LEXIS 37924 at *29. Therefore "plaintiff must allege facts sufficient to overcome this presumption." *Id.*

In dismissing plaintiffs' Title IX claims, Judge Beckwith in *Cincinnati* found that  "[T]he fact that the hearing board chair participated in sexual assault victim advocacy programs did not demonstrate that she was biased against the plaintiff in his sexual misconduct disciplinary hearing." *Id.* at *29.  Judge Beckwith logically reasoned:

> There is not exactly a constituency in favor of sexual assault, and it is difficult to imagine a proper member of the Hearing Committee not firmly against it.  It is another matter altogether to assert that, because someone is against sexual assault, she would be unable to be a fair and neutral judge as to whether a sexual assault had happened in the first place.

*Id.* at *29–*30.

Similarly here, at best, the allegations pertaining to President Weinberg and Clifford relate to their general stance against sexual assault and their ties to organizations that stand against sexual assault.  (D.E. 44 at 13–15)  Further, the allegations pertaining to Vice President

Kennedy are based on her position as Interim Director of Women's Studies and her academic publications, and are implausibly far-fetched.  (D.E. 40 at 5 n.3)

The allegations against Hausman are equally attenuated and are based on her involvement in an investigation relating to a matter involving another student in 2010 – five years prior to this case.  (D.E. 29-2 at 24–95)[9]  Pursuant to *Sahm*, that alleged incident is too remote in time to be even circumstantial evidence in this case.  110 F. Supp. 3d at 779.  The allegations are otherwise based on Hausman's alleged conduct during Plaintiff's hearing – aggressively staring, smiling and laughing, in some unspecified way hindering Plaintiff's ability to cross-examine Clifford, pressuring others to impose greater sanctions on Plaintiff, and stating off the record during adjudications that panel members needed to weigh the "future of 1000 girls."  (D.E. 29 ¶ 33) Even if taken as true for purposes of this Motion, these allegations fail to suggest that Hausman was biased against Plaintiff because of his gender.  If Hausman believed Plaintiff committed sexual assault and felt sanctions should be greater, there is nothing wrong – let alone unlawful – with her expressing that to panel members in sanctions discussions or voicing her concerns about Plaintiff posing a risk to other students.  None of this alleged conduct suggests that Hausman has any bias against males or that she found against Plaintiff because of his gender, as opposed to her belief that he was guilty of the charged sexual assault and therefore should be sanctioned.

     D.    <u>Plaintiff Fails To State A Title IX Claim Based On A Deliberate Indifference, Hostile Environment, Or Erroneous Outcome Standard</u>

In Plaintiff's original Memocontra, Plaintiff explicitly disavowed any attempt to assert a selective enforcement claim, maintaining: "It should be noted, Denison spends four pages alleging JD's selective enforcement/Title IX claim must be dismissed. . . . But, JD's Complaint

---

[9]  This single prior lawsuit that identifies Hausman does not allege Hausman has anti-male bias or advance a Title IX claim.

contains <u>no</u> selective enforcement claim." (D.E. 44 at 21 n.23) (emph. in original).  Selective enforcement and erroneous outcome, however, are the ***only*** two standards recognized by the Sixth Circuit for disciplinary cases.  In Plaintiff's new Memocontra, Plaintiff backpedals in an attempt to save his Title IX claim by asserting – for the first time – that his hostile environment claim is actually based on the selective enforcement standard.  Plaintiff then cites the standard for selective enforcement claims set out by Judge Smith in the *Marshall* case. (D.E. 44 at 25). This disingenuous effort to save his Title IX claim by invoking a selective enforcement standard, however, still fails.  Plaintiff's Title IX claim is insufficiently pled to survive dismissal under any theory he now seeks to advance.

First, to the extent Plaintiff tries to plead a Title IX claim under a hostile environment standard,[10] Plaintiff has not identified *any* case that has permitted a hostile environment claim against a university for allegations relating to investigation and disciplinary proceedings by a person accused of sexual misconduct who was subjected to discipline.  Likewise, Denison is not aware of any such case.  Plaintiff cites only to the case of *Klemencic v. Ohio State University*, 263 F.3d 505 (6th Cir. 2001), to support his theory.  In that case, however, a university coach was alleged to have sexually harassed a student and thereby created a hostile environment.  (*Id.*) That case does not recognize a hostile environment Title IX standard based on a fact pattern similar to the current case – discipline of an accused student following a Title IX investigation and disciplinary proceedings.

Because there is no Title IX case on point, Plaintiff relies on a Title VII case on hostile environment.  (*See* D.E. 44 at 27)  In *Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir.

---

[10]  Plaintiff's Amended Complaint specifically alleges claims for violation of Title IX based on hostile environment and/or discrimination, deliberate indifference, and erroneous outcome.  (D.E. 29 ¶¶ 153– 90) It does not allege a violation of Title IX based on selective enforcement.

2013), the Court held that "[a] work environment is actionable under Title VII if the workplace is "permeated with discriminatory intimidation, ridicule or insult sufficiently severe or pervasive to alter the conditions of employment." *Id.* at 813.  Even assuming, *arguendo*, this Title VII workplace standard is instructive, Plaintiff would have to plausibly allege Denison was "permeated with discriminatory intimidation, ridicule or insult sufficiently severe or pervasive to alter the conditions of [his environment]."  Plaintiff has not plausibly alleged any such facts. Indeed, the court in *Doe v. Salisbury University*, 123 F. Supp. 3d 748 (D. Md. 2015) – a case relied upon by Plaintiff in his Memocontra – found that similar factual allegations of sexual harassment by an accused in connection with disciplinary proceedings do *not* plausibly state a claim for sexual harassment.  *Id.* at 765.[11]

Second, to the extent Plaintiff now tries to advance a Title IX claim under a selective enforcement standard, to survive a motion to dismiss he must plausibly plead that "a female was in circumstances sufficiently similar to his own and was treated more favorably" by Denison. *Marshall*, 2015 U.S. Dist. LEXIS 155291 at *17–*18).  In *Marshall*, Judge Smith found that plaintiff failed to allege facts "about a single instance when OU declined to investigate allegations that a similarly situated female violated the policy," and failed to allege that a female who violated the policy received a more lenient punishment than plaintiff.  2015 U.S. Dist. LEXIS 155291 at *19.  Without alleging such facts, plaintiff failed to plausibly demonstrate: (1) that the University investigated complainant's allegations about plaintiff because he is male, and would not have investigated if he was female; or (2) that the University disciplined plaintiff more

---

[11] Plaintiff acknowledges that "actual notice" of the alleged harassment is also a requirement for such a claim.  (D.E. 44 at 25–26)  To the extent the alleged conduct of Hausman at the hearing forms the basis for his harassment claim (D.E. 29 ¶ 33), Plaintiff does not allege he made Denison aware of the hearing conduct he complains about involving Hausman.  Plaintiff's appeals attached to his Amended Complaint also do not indicate he ever brought these allegations to Denison's attention.  (*See* D.E. 29, Exs. 25, 28, 30, and 34)

harshly because he is male, and would have been more lenient if he was female.  *Id.* at *19–*22; *see also Case*, 2015 U.S. Dist. LEXIS 123680 at *15.  The same is true here.  Plaintiff has failed to allege facts that any female was accused of violating the policy and was not investigated, or that any female was found to have violated the policy, but received a more lenient punishment. Therefore, Plaintiff has failed to allege facts to assert a plausible selective enforcement claim.

Third, Plaintiff also cannot advance a Title IX claim under a deliberate indifference standard.  The Sixth Circuit has not recognized a deliberate indifference standard for Title IX claims based on a university disciplinary proceeding.  (*See* D.E. 40 at 14)  In granting defendant's motion to dismiss plaintiff's deliberate indifference claim, Judge Smith in *Marshall* "decline[d] to broaden the current framework used to analyze allegations about discrimination in a university disciplinary proceeding in the absence of controlling Sixth Circuit precedent."  2015 U.S. Dist. LEXIS 155291 at *26.  Likewise, this Court should dismiss Plaintiff's claim advanced under this standard, absent any recognition of such a framework by the Sixth Circuit.

Fourth, Plaintiff cannot advance a Title IX claim under an erroneous outcome standard because he has failed to plead facts sufficient to show a causal connection between the alleged flawed outcome and gender bias.  (D.E. 40 at 18–19)  In *Cincinnati*, the plaintiffs raised many similar concerns about the alleged flawed processes of UC during the hearing, complained UC was influenced by pressure from the federal government, complained UC had a bias against males accused of sexual misconduct, presented statistics showing only males had been investigated and disciplined for sexual misconduct, and alleged that "males charged with sexual misconduct invariably are found responsible for the violation."  *Cincinnati*, 2016 U.S. Dist. LEXIS 37924 at *44–*49.  The Court found that these allegations were "insufficient to plausibly infer that the result of Plaintiffs' disciplinary hearings were affected by gender discrimination"

22

and dismissed plaintiffs' claim based on erroneous outcome.  *Id.* at *48–*49.  Similarly in this

case, Plaintiff has not alleged facts to plausibly infer that his disciplinary hearing was affected by

gender discrimination.[12]

### V.     Count Nine Must Be Dismissed Against Denison Because The Parties' Relationship Is Governed By Contract And Plaintiff Has Not Identified Any Benefit Denison Unjustly Retained

Plaintiff's unjust enrichment claim fails as a matter of law for two reasons:  (1) any claim

for a refund of payments Plaintiff has made to Denison lies in contract; and (2) Plaintiff has not

identified any benefit Denison has retained where it would be unjust to do so.  As discussed

above, the parties' relationship is contractual as a matter of law (*see supra* at 12), and Plaintiff

cannot bring an unjust enrichment claim when a contract exists.  (*See* D.E. 40 at 21–23)  In

Plaintiff's Memocontra, he ignores the controlling Ohio cases of *Gallo v. Westfield National*

*Insurance Co.*, 2009-Ohio-1094, ¶¶ 19–20 (Ohio Ct. App. 2009) and *Pfeiffer-Fiala v. Kent State*

*University*, 2015-Ohio-5558, ¶ 36 (Ohio Ct. Cl. 2015).  Both of these cases were discussed in

Denison's Motion, and both granted motions to dismiss unjust enrichment claims because the

---

[12]  Plaintiff attaches to his Memocontra two unpublished decisions from the Northern District of Georgia, Atlanta Division, both from the same case of *Doe v. Board of Regents of the Univ. Sys of Ga.*, Case no. 1:15-cv-4079.  In trying to access these opinions and other case filings from Pacer, Defendant learned the ***entire case*** was sealed two months prior to Plaintiff filing his Memocontra:  "43: ORDER granting the 42 Motion to Seal Case. The Clerk is directed to SEAL this case in its entirety. Signed by Judge Steve C Jones on 06/13/16. (aaq) (Entered: 06/14/2016)."  Given the sensitive nature of the allegations in that case and the Northern District of Georgia's order to seal those records, Denison will not further discuss specifics of the sealed decision in this case.  The facts alleged, however, are fully distinguishable from this case.  Moreover, some of the claims that were dismissed in that case were dismissed for similar principles of law as Denison has advanced in this case.

Plaintiff also cites to the case of *Marshall v. Indiana Univ.*, Case No. 1:15-cv-00726, 2016 U.S. Lexis 32999 (S.D. Ind. Mar. 15, 2016), contending "the aforementioned factual allegations from JD's complaint share similarities with a male student at Indiana University who defeated a motion to dismiss Title IX claims."  (D.E. 44 at 24).  Plaintiff does not indicate what the alleged "similarities" are that he perceives.  Review of that case reveals a significant difference from this case.  Namely, the plaintiff in that case informed the university that "he too had been sexually assaulted by another female student.  However, the Defendants never investigated Marshall's reported sexual assault."  *Id.* at *3–*4.  This specific factual pleading could plausibly support a Title IX claim based on the selective enforcement standard.

parties' relationship was governed by contract. Plaintiff has not cited any legal authority – in Ohio or otherwise – that allows an unjust enrichment claim to proceed where there is a contract.

Second, Plaintiff has not identified any benefit Denison retained that would be unjust for it to retain. (D.E. 40 at 21–23) In particular, Plaintiff has not cited any case that has allowed a claim for unjust enrichment to proceed when a student is expelled after the completion of a semester. Denison identified three cases that held when a student pays for and receives academic credit, but is expelled before his degree is issued, he is ***not*** entitled to a refund. (*Id.*)

## VI. Count 10 Must be Dismissed Against Denison Because A Separate Claim Does Not Exist For Injunctive Relief

Plaintiff acknowledges that injunctive relief is not a separate cause of action, and admits that he seeks injunctive relief as a "remedy." (D.E. 44 at 54–55) Plaintiff can only seek injunctive relief as a remedy if he has a cause of action survive that would entitle him to injunctive relief. *Saha v. Ohio State Univ.*, No. 05-CV-675, 2005 U.S. Dist. LEXIS 44661, at *10 (S.D. Ohio Oct. 26, 2005) (granting motion to dismiss injunctive relief claim). Therefore, Plaintiff's separate injunctive relief claim must be dismissed. (D.E. 40 at 23)

## VII. Count 11 Must be Dismissed Against Denison Because Plaintiff Has Failed to Plead Facts Sufficient to Show That Denison Can Be Held Liable for Negligent Supervision of Clifford

As a prerequisite to maintaining an action for negligent supervision or retention against Denison, Plaintiff must be able to establish a tort claim against Clifford or a Denison employee. (D.E. 40 at 23–24) Plaintiff has not pled any tort claim against an employee. The only tort claim Plaintiff has alleged against Clifford is a claim for general negligence. (D.E. 29 ¶¶ 148–52) That claim fails for the reasons set forth in Clifford's Motion to Dismiss. (D.E. 38 at 15–18)

Furthermore, Plaintiff must allege both that Clifford engaged in incompetent conduct that rises to the level of "criminal or tortious propensities" and that Denison knew, or should have

known, of those propensities (D.E. 40 at 24–25). Plaintiff, however, has failed to allege anywhere in his Amended Complaint that Clifford had a *past history* of criminal, tortious, or otherwise dangerous conduct, let alone such conduct about which Denison knew or could have discovered *prior* to contracting with her. The only conduct of which Plaintiff complains is conduct he alleges occurred *after* Denison contracted with Clifford. (*See* D.E. 40 at 24). In Plaintiff's Memocontra, the sole "example" Plaintiff identifies to support his claim is that "JD identified Clifford's affiliation with 'NCHERM' an organization advocating anti-male positions." (D.E. 44 at 54). The National Center for Higher Education Risk Management is a law and consulting firm that offers prevention and risk management to universities. Pleading a claim for negligent supervision against Denison based on its contracting with an outside investigator that is affiliated with a legal consulting firm shows how implausible Plaintiff's claim truly is. Plaintiff's Amended Complaint is utterly devoid of any assertion that Denison was on notice prior to any of the conduct here at issue that Clifford was an incompetent individual with tortious propensities.

## VIII. Conclusion

For all of the reasons set forth above and in Denison's Motion to Dismiss, Plaintiff's Amended Complaint should be dismissed in its entirety against Defendant Denison University.[13]

---

[13] In Plaintiff's Memocontra, Plaintiff repeatedly states that "Defendants appear to agree with JD's position" regarding various cases or arguments, "because Defendants did not dispute or distinguish" the cases or dispute the arguments in its original Motion to Dismiss Plaintiff's Complaint. (*See* D.E. 4 n.2; p. 7 n.6; p. 8 n.7; p. 13 n.11, p. 15 n.14; p. 23 n. 9; p. 24 n.34; p. 25 n.35; p. 29; p. 31 n.42; p. 41 n.56; p. 44 n.60; p. 50 n.67; p. 50 n.68; p. 52 n.74; p. 52 n.75). The page limit for Denison to respond to Plaintiff's original 50-page Memocontra was 20 pages and Denison's page limit to respond to Plaintiff's current 55-page Memocontra is 25 pages. Therefore, Denison does not have the pages it would possibly need to dispute or distinguish every case or argument made by Plaintiff. Not addressing a case or argument however, does not mean Denison agrees with Plaintiff's representation of a case or argument. In fact, Plaintiff's Memocontra has repeatedly and deliberately misrepresented case law, regulations, directives, policies, and other outside materials. Denison has addressed those that it believes are most relevant for this Court's consideration of Denison's Motion, but in no way concedes the accuracy or relevance of positions or cases not specifically addressed herein.

Respectfully submitted,


*/s/ Robert A. Harris*
Robert A. Harris (Ohio Bar #0059549)
Kelly Jennings Yeoman (Ohio Bar #0078528)
Natalie M. McLaughlin (Ohio Bar #0082203)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
Telephone: (614) 464-8373
Facsimile: (614) 719-4751
Email: raharris@vorys.com; kjyeoman@vorys.com;
nmmclaughlin@vorys.com

*Attorneys for Defendant Denison University*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing Reply in Support Motion to Dismiss was electronically filed with the Court and served via the CM/ECF system upon the following on the 2nd day of September 2016:

> Eric J. Rosenberg
> Ellen L. Foell
> Rosenberg & Ball Co. LPA
> 395 North Pearl Street
> Granville, OH 43023
>
> *Attorneys for Plaintiff John Doe*
>
> Joshua S. Berger
> The Berger Law Firm
> P.O. Box 22421
> Beachwood, OH 44122
>
> *Attorney for Defendant Jane Doe*

And was served via U.S. mail upon the following on the 2nd day of September 2016:

> Mary-Kathleen Clifford
> 1134 Broadview Avenue
> Columbus, OH 43212
>
> *Defendant Pro Se*

*/s/ Natalie M. McLaughlin*
Natalie M. McLaughlin